## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFERY L. MCLEMORE,

      **Plaintiff,**

      **v.**                                 **Case No. 15-3202-JAR-DJW**

SALINE COUNTY SHERIFF'S OFFICE, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

      Plaintiff Jeffery L. McLemore filed this suit against various prison officials for several claims relating to three fights he had with fellow inmates.  Plaintiff has filed two Motions to File an Amended Complaint, which are now before the Court.[1]  The Court is prepared to rule.  For the reasons set forth below, the Court denies Plaintiff's motions.

### I.  Procedural Background

      This case is still in its infancy, but the record is already messy.  Plaintiff filed his initial complaint on August 24, 2015.[2]  He filed an amended complaint on October 13, 2015.[3] Plaintiff filed a supplement to his amended complaint on November 20, 2015.[4]  He then filed a motion to file a second amended complaint on February 2, 2016.[5]  On February 23, 2016, the Court issued an order, construing two documents as motions to file supplement pleadings and granting them.[6] The Court also ordered Plaintiff to file an amended complaint that corrects the failure to state a

---

[1] Docs. 38 and 46.

[2] Doc. 1.

[3] Doc. 5.

[4] Doc. 6.

[5] Doc. 7.

[6] Doc. 9.

claim as to defendants Shea, Melander, and Kochanowski.  That same day Plaintiff's Second Amended Complaint was filed.[7]  Plaintiff then filed two more supplements—one to his original complaint and one to his second amended complaint.[8]  On March 22, 2016, the Court dismissed defendants Shea, Melander, and Kochanowski from the case because Plaintiff failed to submit an amended complaint that corrected his failure to state a claim with respect to the supervisory capacity of those Defendants.[9]  The next day Plaintiff filed yet another supplement to his original complaint and second amended complaint.[10]  On March 25, 2016, the Court issued an order stating that screening under 28 U.S.C. § 1915A had been completed and the case would be reassigned to a new district judge.[11]  Five days later, Plaintiff filed another supplement to his second amended complaint.[12]

## II.  Motions to Amend

On April 14, 2016, Plaintiff filed the first of his two pending motions for leave to file an amended complaint.[13]  Defendants opposed Plaintiff's motion, requesting the Court order Plaintiff to file "one comprehensive complaint that combines all three of his complaints into one document that has a numbered paragraph for every single allegation."[14]  On May 9, 2016, Plaintiff filed the second of his two motions for leave to file an amended complaint.[15]  This

---

[7] Doc. 10.

[8] Docs. 20 and 21.

[9] Doc. 22.

[10] Doc 23.

[11] Doc. 35.

[12] Doc. 37.

[13] Doc. 38.

[14] Doc. 40.

[15] Doc. 46.

motion included a proposed Third Amended Complaint that, for the first time, combined all of his allegations into one comprehensive and organized document.[16]

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. It provides that the parties may amend a pleading once "as a matter of course" before trial if they do so within (A) 21 days after serving the pleading, or (B) "if the pleading is one to which a responsive pleading is required," 21 days after service of the responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[17]   Other amendments are allowed "only with the opposing party's written consent or the court's leave."[18]   Rule 15(a)(2) also instructs that the court "should freely give leave when justice so requires."[19]   The court's decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[20]   The court may deny leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[21]

### B.  Analysis

Here, Plaintiff's amendments are futile on their face.  As Defendants point out, Plaintiff attempts to add previously-dismissed defendants back into the case.  On February 23, 2015, the

---

[16] Doc. 46-1.

[17] Fed. R. Civ. P. 15(a)(1).

[18] Fed. R. Civ. P. 15(a)(2).

[19] *Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[20] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[21] *Id.* (quoting *Foman*, 371 U.S. at 182).

Court directed Plaintiff to file an amended complaint correcting his failure to state a claim as to the supervisory status of defendants Melander, Shea, and Kochanowski.  Plaintiff did not file an amended complaint correcting that failure.  Thus, the Court dismissed defendants Melander, Shea, and Kochanowski from the case.  Plaintiff now attempts to add Melander and Shea back into the case through his amended complaint.  Aside from disregarding the Court's previous order(s), he still provides no factual support regarding a claim against supervisors.  This amendment is therefore futile on its face.

Similarly, Plaintiff attempts to add Transport Sergeant Eganna to this case.  Sergeant Eganna is added for her role as supervisor of Defendants Toner and Main.  The Court already dismissed defendants Melander, Shea, and Kochanowski for the same reason.  Plaintiff still fails to state a claim against any defendant in a supervisory capacity.  He alleges no facts showing (1) personal involvement in the violation, (2) sufficient causal connection between the supervisor's involvement, or (3) the constitutional violation, and a culpable state of mind.  Adding Sergeant Eganna to this case is futile.

Plaintiff also attempts to add two other defendants to this case: David Wallace, a corporal at the jail, and Beth Komareck, a nurse at the jail.  Plaintiff's proposed amendment to add these two defendants is futile, as explained below with respect to the claim alleged against them—denial of medical care.

Plaintiff also appears to introduce three new causes of action: (1) denial of access to the courts; (2) a violation of due process with respect to his administrative segregation classification; and (3) denial of medical treatment.  These amendments are futile on their face.  As to the first, it is plainly obvious from the record that Plaintiff has not been denied access to the court, given the numerous filings and motions Plaintiff has filed.  He also never alleges that he was prejudiced

from this alleged denial of access to the courts.  And Plaintiff's claim fails for the simple fact that the only defendant named with respect to this claim is previously-dismissed defendant Melander.  Likewise, Plaintiff's claim of a violation of due process with respect to administrative segregation is against previously-dismissed defendants Melander and Shea.[22]

Finally, as to the denial of medical treatment, Plaintiff fails to allege sufficient factual support for his claim.  In Plaintiff's original complaint, he did not allege he was denied medical care.  Nor did he name Wallace or Komareck as defendants.  Rather, Plaintiff stated he noticed his nose was bleeding and crooked, which he remedied by setting the bone and cleaning up the blood.[23]  He also noted injuries including black eyes, bumps on his head, and a contusion above his ear.[24]  Only now, several months later, does Plaintiff claim he was denied medical care.  But Plaintiff's own facts on this issue are contradictory.  Now Plaintiff says that he requested medical treatment and that Defendant Wallace informed him that he would tell the nursing staff.  He then states that within thirty minutes of the altercation he was called out of his cell for an eye exam.  This jibes with the contention in his original complaint that he suffered black eyes.  More importantly, however, it also undercuts Plaintiff's claim that he was denied medical care.

Similarly, Plaintiff admits that he spoke with Nurse Komareck on the way to his eye appointment.  Nurse Komareck allegedly told Plaintiff that "there wasn't much she could do for a broken nose *if [Plaintiff had] already set it*."[25]  Plaintiff already admitted in his original

---

[22] Defendant also alleges a due process claim against Defendant Tina Miller.  As explained in the next section, however, Defendant Miller was only named in connection with the Hewitt Incident.  To the extent Plaintiff now alleges Defendant Miller was involved in the Summers Incident, Plaintiff's claim still fails because a claim that he was segregated without a hearing, standing alone, does not state a federal constitutional violation because he is not entitled to a particular degree of liberty in prison.  *Sandin v. Conner*, 515 U.S. 472 (1995); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (There is no right independently protected under the Due Process Clause to remain in the general prison population.).

[23] Doc. 1 at 7.

[24] *Id.*

[25] Doc. 46-1 at 6 (emphasis added).

5

complaint that he, himself, set his broken nose.  Because Nurse Komareck observed him during this encounter, Plaintiff's claim therefore amounts to his difference of opinion with the treatment provided by a medical professional.  Such an allegation does not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment; and is, at most, grounds for a negligence or malpractice claim in state court.[26]  Plaintiff's encounter with Nurse Komareck also undercuts his claim with respect to Defendant Wallace.  Plaintiff's only factual support involving Defendant Wallace is that he said he would tell the nursing staff about Plaintiff's injuries.  But then, on the way to his eye appointment, Plaintiff encounters Nurse Komareck and requests medical attention.  Thus, even if Defendant Wallace had failed to notify the nursing staff, Plaintiff personally notified the nursing staff through Nurse Komareck.  Plaintiff therefore fails to state a claim as to Defendant Wallace.

For these reasons, Plaintiff's proposed amendments are futile.

## III.  Determining the Operative Complaint

Although the Court finds Plaintiff's proposed amendments are futile, the remaining question is what claim(s) are still alive and can move forward.  It is unclear what the operative complaint in this case actually is given the fragmented nature and numerousness of Plaintiff's pleadings.  The Court has therefore considered all of Plaintiff's filings related to either the original complaint or the second amended complaint.[27]  After considering all of those pleadings, the Court finds Plaintiff has improperly joined defendants and claims.

---

[26] *See Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976); *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).

[27] Docs. 5, 6, 8, 10, 20, 21, 23, 37, and 42.

The Federal Rules of Civil Procedure apply to suits brought by prisoners.[28]  Pro se litigants must "follow the same rules of procedure that govern other litigants."[29]  FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.[30]

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."[31]  The Court of Appeals for the Seventh Circuit held in *George* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."[32]

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]."[33]  It also prevents prisoners from "dodging" the fee obligations[34] and the three strikes provisions[35] of the Prison Litigation Reform Act.[36]

---

[28] *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

[29] *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel).

[30] *Id.*

[31] *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).

[32] *George*, 507 F.3d at 607 (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

[33] *Id.*

[34] 28 U.S.C. § 1915(b)(1) and (2) pertinently provide: "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."  To that end, the court "shall assess" an initial partial filing fee, when funds exist, and after payment of the initial fee, the prisoner "shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."  *Id.*  Non-prisoner and prisoner litigants alike should not be allowed to combine their unrelated claims

In sum, under Rule 18(a), the plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.[37]  In his complaint, Plaintiff should set forth the transaction(s) or occurrence(s) he will pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Alternatively, Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

Here, Plaintiff violates Fed. R. Civ. P. 20(a)(2) because he names multiple defendants not shown to be connected to all claims by a common occurrence or question of fact or law.  He violates Fed. R. Civ. P. 18(a) because his claims are not related to other claims against different

---

against different defendants into a single lawsuit simply to avoid paying another filing fee in a separate lawsuit. Every litigant is required to responsibly weigh and individually bear, when possible, the costs of his or her decision to pursue litigation of disputes in federal court.

[35] 28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

[36] *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

[37] Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 Fed. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) drop misjoined parties or (2) sever misjoined parties and proceed separately).

defendants.   To permit plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in a separate action or actions would allow him to avoid paying the filing fees required for separate actions.   It might also allow him to circumvent the three strikes provision set forth in 28 U.S.C. § 1915(g).

Indeed, the separateness of Plaintiff's claims are evidenced by the separate filings over the course of months.[38]   Document 1 details an encounter with inmate David Summers on May 29, 2015 in a prison cell block ("Summers Incident").   Document 5 concerns an incident with inmate Blake Reeves in a prisoner transport van on August 26, 2015 ("Reeves Incident"). Document 10 complains about being housed with Robert Hewitt on November 24, 2015 ("Hewitt Incident").   On their face, Plaintiff's documents describe three completely separate and unrelated events.   And only one of the defendants overlaps between any of the three incidents: Brenda Darr, whom Plaintiff names with respect to the Summers Incident and the Hewitt Incident.   The Court finds these events are not part of the same transaction or occurrence or series of transactions or occurrences.   Rather, they are separate events that should be brought as separate cases.   Plaintiff should not be allowed to skirt the filing costs for his claims or avoid the three strikes provision set forth in § 1915(g).   The only claims in this case should be those that appear in his original complaint regarding the Summers Incident.   The Reeves and Hewitt Incidents shall be dismissed without prejudice.   Plaintiff is welcome to file those as separate cases.   But the Court notes that Plaintiff would be responsible for the full filing fees even if he is granted leave to proceed in forma pauperis, and his complaints would be subject to the same screening

---

[38] *See* Docs. 1, 5, and 10.  Plaintiff combined those three documents, as well as some other details found in his numerous supplemental pleadings, into his proposed Third Amended Complaint.  *See* Doc. 46-1.

mechanism that has occurred here.  In sum, the Court finds that the operative pleading in this case is Plaintiff's original Complaint,[39] which details the Summers Incident.

## IV. Screening

Having established Plaintiff's original complaint is the operative complaint in this case, the Court will now screen the Complaint a second time.[40]

### A.  General Screening Standard

Because Plaintiff is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.[41]  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[42]  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."[43]  In addition, the court accepts all well-pleaded allegations in the complaint as true.[44]  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.[45]  Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."[46]

---

[39] Doc. 1

[40] *See* 28 U.S.C. § 1915(e)(2) (authorizing the screening of a prisoner's complaint *at any time*); § 1915A.

[41] 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

[42] *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

[43] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[44] *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

[45] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

[46] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[47] The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."[48]  The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated."[49]  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[50]

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.[51]  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."[52]  Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible."[53]   "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so

---

[47] *Twombly*, 550 U.S. at 555 (citations omitted).

[48] *Id.* at 555, 570.

[49] *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

[50] *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[51] *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[52] *Kay*, 500 F.3d at 1218 (quotation marks and citations omitted).

[53] *Smith*, 561 F.3d at 1098 (quotation marks and citation omitted); *Bloom v. McPherson*, 346 Fed. App'x 368, 372 (10th Cir. 2009); *Robbins*, 519 F.3d at 1247–48; *see Ellibee v. Fox*, 244 Fed. App'x 839, 843 (10th Cir. 2007).

general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible."[54]

### B.  Specific Screening Standards

#### 1. Improper Defendants

The State and its agencies such as the Department of Corrections are not "persons" that Congress made amenable to suit for damages under § 1983.[55]  Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983.[56] To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation.[57]  The Supreme Court explained that in *Monell* they decided "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983."[58]

#### 2. Eighth Amendment - Failure to Protect

The Supreme Court has made clear that prison and jail officials have a duty to ensure the safety and protection of inmates:

> [P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. . . .   Having incarcerated persons [with] demonstrated

---

[54] *Robbins*, 519 F.3d at 1247 (citing *Twombly*, at 1974).

[55] *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

[56] *See Will*, 491 U.S. at 66, 71 (neither state nor state agency is a "person" which can be sued under Section 1983); *Davis v. Bruce*, 215 F.R.D. 612, 618 (D. Kan. 2003), *aff'd in relevant part*, 129 Fed. App'x 406, 408 (10th Cir. 2005).

[57] *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *see Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)).

[58] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989).

proclivit[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.[59]

However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[60]  A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm;" and a subjective component requiring that defendants acted with the culpable state of mind referred to as "deliberate indifference."[61]  Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety."[62]  Deliberate indifference requires "a higher degree of fault than negligence."[63]  A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment.[64]  It follows that plaintiff must allege facts indicating that defendants actually knew of but disregarded a serious risk to him, rather than that they should have been aware of possible danger.[65]  The mere fact that an assault occurred does

---

[59] *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (internal quotation marks and citations omitted); *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

[60] *Farmer*, 511 U.S. at 834.

[61] *Id.*; *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

[62] *Farmer*, 511 U.S. at 837 ("[T]the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[63] *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (other citations omitted); *Farmer*, 511 U.S. at 835.

[64] *Id.*

[65] *Id.*

not establish the requisite deliberate indifference to plaintiff's constitutional rights.[66]  Nor does an isolated attack by another inmate demonstrate a failure to protect.  A claim of negligence must be brought in state rather than federal court as it is not an adequate basis for claiming cruel and unusual punishment under the Eighth Amendment.

### C. Analysis

#### 1. Improper Defendants

Plaintiff names the Saline County Sheriff's Office in his original complaint.  The Court finds that the Saline County Sheriff's Office is an improper defendant in this case because it is not a "person" suable under § 1983.  Plaintiff has pointed to no policy or deficiency in the training program used by the Sheriff and no causal link between any such inadequacy and the allegedly unconstitutional acts or inactions of Defendants.  Defendant Saline County Sheriff's Office is therefore dismissed from this action.  Additionally, defendants Shea and Melander remain dismissed from this action pursuant to this Court's previous order.[67]  Thus, the remaining defendants in Plaintiff's action are Amber Black, Gary Fay, and Brenda Darr.

#### 2. Negligence

Plaintiff's original complaint alleges three counts: (1) deliberate indifference; (2) negligence; and (3) failure to protect, all of which violated his Eighth Amendment rights. Construing his complaint as liberally as possible, the Court finds Plaintiff really only asserts one claim: failure to protect in violation of his Eighth Amendment rights.  Plaintiff, however, simultaneously alleges deliberate indifference and negligence.  A claim for failure to protect requires more than negligence.  Additionally, this Court already directed Plaintiff to show cause

---

[66] *Hovater*, 1 F.3d at 1068.

[67] Doc. 22.

as to why the claim(s) for negligence should not be dismissed.[68]  Plaintiff did not address those concerns.  But the Court did not address the status of Plaintiff's negligence claims in its previous order.[69]  The Court now finds that Plaintiff's claim(s) of negligence are dismissed for failure to state a constitutional claim.  A claim of negligence does not give rise to a claim of cruel or unusual punishment under the Eighth Amendment.  At best, it is a state law claim, and the Court therefore dismisses Plaintiff's claim of negligence.

### 3. Failure to Protect

Given the Court's findings to this point, Plaintiff has one remaining claim against three defendants: a claim of failure to protect, in which he alleges Defendants Black, Fay, and Darr acted with deliberate indifference.

## V.  Conclusion

The Court denies Plaintiff's two motions to amend because the proposed amendment(s) are futile on their face.  Next, the Court finds the operative complaint amidst this messy record is Plaintiff's original complaint: Document 1.  This is because Plaintiff is clearly alleging three separate incidents spanning months of time with almost no overlap between defendants.  The Court has screened that complaint once again, finding it remains deficient in a couple ways.  First, Saline County Sheriff's Office is an improper defendant as it is not a person under § 1983.  Defendants Shea and Melander remain improper defendants, as this Court found in its previous order dismissing them from this action.  Second, Plaintiff alleges negligence.  But negligence does not give rise to a constitutional violation.

For these reasons, Plaintiff's sole remaining claim in Document 1 is a claim of failure to protect in violation of his Eighth Amendment rights against defendants Black, Fay, and Darr, all

---

[68] Doc. 9.

[69] Doc. 22.

of whom Plaintiff alleges acted with deliberate indifference (as opposed to negligence).   All other claims and defendants are hereby dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motions to File an Amended Complaint (Docs. 38 & 46) are denied.   All Defendants except for Amber Black, Brenda Darr, and Gary Fay are hereby dismissed, and all claims except Plaintiff's claim of failure to protect are hereby dismissed.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants have fourteen days from the date of this Memorandum and Order in which to file an answer or otherwise plead.

**IT IS SO ORDERED.**

Dated June 28, 2016, at Kansas City, Kansas.

<u>s/ Julie A. Robinson</u>
U.S. District Judge