# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JEFFREY L. MCLEMORE,

    Plaintiff,

v.

SALINE COUNTY SHERIFF'S OFFICE, et al,

    Defendants.

Case No. 15-3202-JAR-DJW

## MEMORANDUM AND ORDER

Plaintiff Jeffery L. McLemore filed this suit against various prison officials for claims relating to a fight he had with a fellow inmate. On June 28, 2016, the Court entered a Memorandum and Order[1] denying two motions filed by Plaintiff seeking leave to amend his complaint,[2] finding them to be futile because they would not have withstood a motion to dismiss for failure to state a claim upon which relief may be granted. The Court further dismissed all claims against all Defendants except a single claim under 42 U.S.C. § 1983 for failure to protect in violation of Plaintiff's Eighth Amendment rights, against Defendants Amber Black, Brenda Darr, and Gary Fay, who are correctional officers at the Saline County Jail. The Court found that the other claims were otherwise inappropriate attempts to join claims and defendants that were not related to the originally pled facts in the Complaint, or would not withstand a motion to dismiss.

On January 26, 2017, the Court issued a Memorandum and Order (Doc. 95), preliminarily ruling on Defendants' Motion for Judgment on the Pleadings (Doc. 78). Because Defendants had cited to matters outside the pleadings, out of an abundance of caution, the Court

---

[1] Doc. 56.

[2] Doc. 1.

converted the motion to a motion for summary judgment, and invited the parties to supplement the record with any materials pertinent to the motion. The parties have now each submitted their supplemental briefs and exhibits,[3] and the Court is prepared to rule. As described more fully below, the Court grants Defendants' motion for judgment on the pleadings, which this Court converted to a motion for summary judgment.

I.  **Uncontroverted Facts**

The following facts are uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party. On summary judgment, the *Martinez* report "'is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence.' Accordingly, a court may not rely on a *Martinez* report to resolve material disputed facts."[4] The Court considers the *Martinez* Report in this case to the extent it is not controverted by evidence submitted by Plaintiff.[5]

Plaintiff was an inmate at the Saline County Jail in the spring of 2015. Officer Black witnessed a physical altercation between Plaintiff and inmate David Summers on April 29, 2015. Officer Darr was also aware of the fight. Defendants separated Plaintiff and Summers, and placed a housing restriction in the prison database to limit contact between these inmates.

Officer Fay initially attempted to move Plaintiff to the "2400 maximum pod" on May 29, 2015, but Plaintiff informed Black that Summers' brother was in that pod and that there would be problems if they moved him in there; he was trying to stay out of trouble to get a job back. There was no housing restriction between Plaintiff and Summers' brother, but Officer Black

---

[3]The parties dispute whether Plaintiff timely filed his supplemental submission. But because Defendants admit they are not prejudiced by the late submission, they agree that the Court should rule on the merits. Therefore, the Court accepts and has considered Plaintiff's supplemental submissions in ruling on this motion. Docs. 99–100.

[4]*Breedlove v. Costner*, 405 F. App'x 338, 342–43 (10th Cir. 2010) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

[5]Doc. 39.

informed Corporal Darr about the conflict and then Officer Black moved Plaintiff to the disciplinary segregation unit, or "2300 pod" instead, until a better option became available. Pod 2300 is a maximum security pod that houses twelve inmates in twelve individual cells. Generally, two inmates cannot be housed in the same pod if they have a housing restriction against one another, which is just a note in each inmate's jacket, or file, that they should not be housed together. This is because there will likely be problems if they are allowed to interact face-to-face. These housing restrictions are not applicable to Pod 2300 (or 4000, a similar maximum security pod with only four cells), because the inmates are only allowed out of their cells one at a time. Plaintiff was placed in a cell next door to Summers in the 2300 pod. Officer Black heard Summers yelling and threatening Plaintiff, and told him to stop. Plaintiff complained to Officer Black several times about his fear of Summers.

In Pod 2300, when it is time to distribute medicine, all inmates are in their locked cells. Once all inmates are locked down, one inmate at a time is allowed out to come down, get his medicine, then return to his cell, closing the cell door when he returns. The officer who is in charge of opening cells opens the first cell, comes out to wait in the vestibule with the nurse so the nurse is not alone with the inmates, then the officer returns to the desk, and once the cell door of the inmate who just received his medication is closed, the officer opens the next cell. It is not unusual for the inmate to return to his cell and close the door before the officer gets back to his desk, so all of the cell lights on the officer's desk would be green upon his return, signaling to the officer that all cell doors are locked and it is safe to open the next inmate's cell door.

On May 29, 2015, Plaintiff's cell door accidentally locked behind him after he exited his cell to get his medication. As Plaintiff was trying to re-enter his cell, Officer Fay opened inmate David Summers' cell door before ensuring that Plaintiff's door was shut. Summers attacked

Plaintiff with closed fists and attempted to throw him over the railing of the top cell tier. Summers then threw Plaintiff to the ground and punched him in the face repeatedly. When Plaintiff returned to his cell, he noticed that his nose was bleeding and crooked, so he set the bone and began to clean up the blood. He also had black eyes, bumps on his head, and a contusion above his ear.

## II.     Standards

As this Court described in its previous order, Defendants move for judgment under the doctrine of qualified immunity. Qualified immunity may apply as a defense to Plaintiff's individual-capacity claims against Officers Black, Carr, and Fay.[6] Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.[7] As the Tenth Circuit explained in *Rojas v. Anderson*,[8] "because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the qualified immunity defense triggers a modified summary judgment standard.[9] The initial burden rests on the plaintiff, rather than the defendant; and the plaintiff must first "clear two hurdles:" (1) demonstrate that the defendant violated his constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[10]

---

[6]*See, e.g.*, *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).

[7]*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[8]727 F.3d 1000, 1003 (10th Cir. 2013).

[9]*Id.*

[10]*Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).

4

**III.     Discussion**

In determining whether the plaintiff has demonstrated a violation of his constitutional or statutory rights and that the right was clearly established at the time, the court must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment. In *Scott v. Harris*,[11] the Supreme Court held that "this usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[12] The Tenth Circuit has explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[13]

Plaintiff first argues that qualified immunity is inapplicable here because he advances an official capacity claim against these remaining Defendants. But this Court has already dismissed Plaintiff's official capacity claim in this matter. In its June 28, 2016 Order, the Court dismissed the Saline County Sheriff's Office as an improper defendant. The Court explained that the Sheriff's Office is not amenable to suit, and that in order to impose § 1983 liability on the county, Plaintiff must demonstrate that a county policy or custom was behind the alleged constitutional violation.[14] The Court further explained that because Plaintiff had pointed to no policy or deficiency in the training program used by the Sheriff, nor to any causal link between

---

[11]550 U.S. 372 (2007).

[12]*Id.* at 378–80.

[13]*Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)) (internal alterations omitted).

[14]Doc. 56 at 12; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978).

the alleged inadequacy and the allegedly unconstitutional conduct by Defendants, any official capacity claim must be dismissed.[15]

As the Court previously stated, the only remaining claim in this matter is Plaintiff's Eighth Amendment claim against Defendants Black, Darr, and Fay in their individual capacities for failure to protect Plaintiff from the May 29, 2015 assault by Summers. Therefore, to avoid qualified immunity, Plaintiff must first demonstrate that these Defendants violated his Eighth Amendment rights. A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm;" and a subjective component requiring that defendants acted with the culpable state of mind referred to as "deliberate indifference."[16] Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety."[17] Deliberate indifference requires "a higher degree of fault than negligence."[18] A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment.[19] It follows that a plaintiff must allege facts indicating that the defendants actually knew of but disregarded a serious risk to him, rather than that they should have been

---

[15]Doc. 56 at 12, 14.

[16]*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

[17]*Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[18]*Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (citations omitted); *Farmer*, 511 U.S. at 835.

[19]*Farmer*, 511 U.S. at 835.

aware of possible danger.[20] The mere fact that an assault occurred does not establish the requisite deliberate indifference to a plaintiff's constitutional rights.[21]

Accepting Plaintiff's version of the evidence as true, he has not demonstrated a constitutional violation. Drawing all reasonable inferences from the evidence urged by Plaintiff, Officers Black and Darr attempted to accommodate Plaintiff's request to be separated from Summers' brother despite the fact that there was no housing restriction in place between the two inmates. Defendants placed Plaintiff in the 2300 pod because it is a segregation unit, so only one inmate at a time is allowed out of his cell.[22] Therefore, Plaintiff's allegations do not demonstrate that he was placed in conditions posing a substantial risk of serious harm. Rather, he was placed in a segregation unit temporarily until a better option became available after he complained about being placed next to Summers' brother in a regular pod. There is no evidence that prison officials had a better placement option for Plaintiff after he asked to be moved, and the evidence demonstrates that they temporarily placed him in the segregation pod believing it to be a safer option for him.

Plaintiff likewise fails to meet his burden of demonstrating deliberate indifference. Plaintiff points to evidence of an April 29, 2015 altercation between himself and Summers, which Officer Black witnessed, as evidence that Black should have been aware of an increased risk of conflict between the two prisoners. Plaintiff also points to evidence that Officer Darr was aware of the first fight, that Defendants separated Plaintiff and Summers after that fight, and that they imposed a housing restriction to limit contact between these inmates. Plaintiff claims he also complained to Officer Black several times on May 29 about his fear of Summers. Plaintiff

---

[20]*Id.*

[21]*Hovater*, 1 F.3d at 1068.

[22]*See* Doc. 100-1 at 13 (Pl. Ex. C ¶ 10).

argues that this evidence demonstrates that Defendants were aware of the risk of harm to Plaintiff if he was place in close proximity to Summers, yet they ignored that risk by placing him in a cell next to Plaintiff in pod 2300. But even accepting all of this evidence as true, it does not rise to the level of deliberate indifference. While it may be true that Defendants were aware of a possible risk of harm by placing Plaintiff in the segregation unit next to Summers because they knew the two men had a history of conflict, none of this evidence suggests that Defendants knew that placing Plaintiff in that pod created excessive risk to inmate health or safety. And there is no evidence to suggest that Fay's failure to check to make sure that Plaintiff's door was closed after his medication pass was done knowingly or with reckless disregard for an excessive risk to his safety. This is particularly true in the absence of any evidence that Plaintiff alerted Officer Fay to the fact that his door was locked. At best, the evidence suggests negligence.

Plaintiff argues that there were "numerous fights in 2300" and that inmates interact with one another routinely for purposes of church, court, and physician visits. But the evidence Plaintiff cites does not support his assertion. He provides a rules violation report, and two affidavits from Saline County inmates that suggest two incidents have occurred since 2015 in that pod.[23] Ricky Lee Hall's affidavit merely establishes that the nurses at the jail did not usually come into the segregation pods to pass medication at the time of Plaintiff's altercation with 2015. None of this evidence suggests a chronic problem in that pod with inmates entering other inmate's cells that would support an inference of deliberate indifference. As the Court has already explained, the mere fact of an assault, without more, is not sufficient to show deliberate indifference.

---

[23]Doc. 100, Ex. E.

8

Because the Court finds that Plaintiff cannot demonstrate a constitutional violation by Defendants, the Court need not proceed to consider whether Defendants violated Plaintiff's clearly established constitutional rights. Defendants' motion for judgment on the pleadings, which this Court has converted to a motion for summary judgment, is granted because Defendants are entitled to qualified immunity. This case is therefore dismissed in its entirety with prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Judgment on the Pleadings (Doc. 78), which this Court converted to a motion for summary judgment (Doc. 95) is **granted**. This case is therefore dismissed in its entirety with prejudice.

    **IT IS SO ORDERED.**

    Dated: May 20, 2017

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE